IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| KELLIE S. HAYTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 07-3267-CV-W-ODS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

<u>ORDER AND OPINION REVERSING COMMISSIONER'S FINAL DECISION
DENYING BENEFITS AND REMANDING FOR RECONSIDERATION</u>

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and Supplemental Security Income payments. The Commissioner's decision is reversed, and the case is remanded for reconsideration.

Plaintiff was born in June 1966. She graduated from high school and has training as an EMT. However, she does not appear to have any past work experience as an EMT, and since February 2000 she has not held any job longer than eleven months. In July 2004, Plaintiff fell after stepping in a hole. She injured her back and has not worked since. At that time, Plaintiff was 4'11" and weighed approximately 200 pounds. R. at 316. Plaintiff's difficulties caused her to see Dr. Esther Wadley, who administered an injection of some sort. R. at 118, 310. On September 4, 2004, she went to the Kitchen Clinic complaining of pain in her legs and back. The doctor gave her referrals to a chiropractor and physicial therapy and prescribed Skelaxin for her pain. R. at 135. Two weeks later, Plaintiff reported that the medication was not working; she was prescribed Flexeril and told to follow up with physical therapy.

Plaintiff commenced physical therapy on September 21, 2004, and completed the therapy in late December. During that time, she attended nineteen sessions and

1

missed three sessions due to illnesses.  While the therapist indicated the "goals established on initial examination" were "completely met" and that therapy should be discontinued, the ultimate extent of improvement is described in rather cautionary terms.  Plaintiff reported the therapy "has helped me and my back is a little better.  It is still hard for me to do my daily chores."  She was also described as able to "stand and walk with less difficulty with less or no pain" and "perform functional skills at work and/or at home with lessor no difficulty."  R. at 138.  Meanwhile, Plaintiff's weight now exceeded three hundred pounds.  R. at 122, 131.  Plaintiff continued receiving treatment from the Kitchen Clinic until April 2005.  At that time she weighed 313 pounds and was still complaining of pain in her back; doctors at the clinic refilled her prescriptions (as they had on all of her previous visits).

      Meanwhile, Plaintiff began seeing Dr. James Duff at the Jordan Valley Community Medical Center.  The first record of such a visit is from November 11, 2005, but there are strong indications this was not her first visit to Dr. Duff.  The title of the form used to document this visit indicates it is for an established patient, the record references diagnoses made (ostensibly by Dr. Duff) as early as June 2005, and the notes indicate a forthcoming appointment that was previously scheduled.  During the November 11 visit, Dr. Duff was presented with a disability questionnaire and "[w]ent over each item with patient and recorded responses.

      Dr. Duff completed a Medical Source Statement ("MSS") that is dated November 22, 2005.  It indicates Plaintiff can lift five pounds frequently and ten pounds occasionally, stand or walk a total of one hour a day and five to ten minutes at a time, sit for three to four hours a day and thirty minutes at a time, and has a limited ability to push or pull, cannot climb, balance, stoop, kneel, crouch or crawl.  He indicated these opinions were based on the patient's history (including a review of x-rays), and that the declarations were consisting with the arthritic changes Plaintiff had experienced.  R. at 168-70.  In December, Plaintiff was prescribed Relafen.  In January 2006, Plaintiff was prescribed Lorcet Plus and methadone, and she was continuing to take methadone at least through April.  R. at 172, 175-76.  The hearing in this case was held on August 4,

2

2006. Plaintiff testified she weighed approximately 270 pounds and was using a cane to help her walk. She also testified about her limitations and capabilities.

The ALJ concluded Plaintiff's testimony was not credible, and further concluded Dr. Duff's MSS could not be relied upon. He found Plaintiff "has the residual functional capacity in which she can occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds, stand and/or walk an total of about 6 hours in an 8 hour workday and sit a total of about 6 hours in an 8 hour workday. She can occasionally stoop, crouch or climb ladders, ropes or scaffolds. She is otherwise unlimited." R. at 20. The Court concludes these findings are not supported by substantial evidence in the record as a whole, so the case must be remanded.

1. On its face, the ALJ's description of Plaintiff's residual functional capacity ("RFC") is difficult to believe. Some of the components are simply incredible: a woman over forty years of age who is 4'11 and weighs nearly 300 pounds cannot be expected to climb ladders, ropes or scaffolds. This is admittedly a minor part of the RFC, but its presence casts doubt on the RFC as a whole. Moreover, there is nothing in the record to support the ALJ's conclusion that Plaintiff can stand or walk a total of six hours per day. Finally, all of the jobs identified by the ALJ as jobs Plaintiff can perform involve light work, but there is not substantial evidence to support the conclusion that Plaintiff can perform light work as that concept is defined in the regulations. E.g., 20 C.F.R. § 404.1567(b).

Even if the ALJ was justified in rejecting Dr. Duff's MSS (an issue discussed below), a finding of Plaintiff's capabilities requires evidence. Here, there is no evidence to support the findings made, and it appears certain Plaintiff is more limited than described by the ALJ. Whether she is so limited that she qualifies for disability cannot be determined conclusively on this record, so the matter must be reconsidered at the administrative level.

2. The ALJ has not adequately justified rejecting Dr. Duff's MSS. He declared Dr. Duff indicated the MSS was "based entirely on the subjective report of symptoms and limitations provided by the claimant," R. at 22, but as explained earlier this does not appear to be the case.

3

3.      The ALJ's assessment of Plaintiff's credibility is wanting.  Among the factors to be considered in assessing a claimant's testimony are the claimant's daily activities; the duration, frequency and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; and functional restrictions.  <u>E.g.</u>, <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted).  As expected, Plaintiff's testimony about her pain, aggravating factors, daily activities, and so forth were favorable to her claim.  The ALJ rejected all of this testimony because (1) no physician indicated she could not work, (2) there was no effort to utilize certain treatments (such as a TENS unit or pain management techniques), and (3) Plaintiff had a sporadic work history.  However, an opinion from a doctor about a person's vocational abilities would not be afforded any weight because the ability to work is not a medical opinion.  More importantly, Dr. Duff indicated Plaintiff was severely limited by her medical ailments.  Efforts to control Plaintiff's pain were made: she underwent physical therapy and was prescribed medication, including narcotic pain medication.  The ALJ discounted these efforts entirely because treatments he cited were not made, but there is no requirement that all potential medical options be pursued – particularly, as is the case here, the claimant lacks the financial means to pursue all options in existence.  Finally, Plaintiff's work history is not really sporadic.  While she held a number of jobs between February 2000 and the alleged onset date, she worked nearly continuously during that time frame.  Before that, she worked for nearly six consecutive years on the family farm.  R. at 97.

4.      The benefits of the physical therapy are not clear.  As the quoted portions of the report demonstrate, Plaintiff obtained all the relief that could be expected from physical therapy.  The extent of that relief was not documented.  Under these circumstances, it is not possible to conclude that Plaintiff is functional simply because she met the goals of the program.

While the record does not provide substantial evidence supporting the Commissioner's decision, it also does not permit the Court to conclude Plaintiff is disabled.  The case must be remanded for reconsideration of Plaintiff's medical condition, medical-based limitations, and credibility.  On remand, Plaintiff should be

permitted to augment the record with information bearing on her condition during the relevant time frame.

IT IS SO ORDERED.

DATE: August 27, 2008

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT